The Honorable Judges of the United States Court of Appeals for the Fourth Circuit Alright, you may be seated and we'll proceed to the third case Clinchfield Coal Company v. Mullins Ms. Prince May it please the Court, my name is Kendra Prince, here for the Petitioner, Clinchfield Coal Company Your Honors, this case turns on a simple but critical safeguard found in the Black Line Regulations Section 718.105D specifically requires that death-fed arterial blood gas studies and I'll refer to those as ABGs further on from now may only be credited if a physician establishes that they were produced by a chronic pulmonary condition The language found at 105D reflects the DOL's recognition that terminal blood gas studies often reflect acute illness. The DOL specifically addressed this in the Federal Register The DOL specifically stated that the produced requirement in the regulation was necessary because, quote, the minor's qualifying test results during a terminal hospitalization may be related to an acute non-pulmonary condition rather than a chronic pulmonary impairment It is clear from the regulatory intent, it's clear that the DOL's intent was to require proof that death-fed arterial blood gas studies were caused by that chronic pulmonary condition and not the acute circumstances that ended in the minor's life Well let me ask you this I don't know without commenting how this case is going to come out but for posterity's sake in future cases is it do you want something like a doctor says I have reviewed this report of the blood gas blood gas test and I find to a reasonable degree of medical certainty it was the cause of his death Is that sufficient? Not so much as the cause of death but it is the cause of the pulmonary I think the language Judge Floyd is focusing on is to a medical degree of medical certainty Yes your honor and we would request Go ahead It would be the employer's position that the physician's report to a reasonable degree of medical certainty would have to establish that those specific test results were produced by a chronic impairment Well the DOL itself used the term medically linked you cite to the DOL's responses in its notice of rulemaking in your brief and the DOL itself states reliance on ABG's should be predicated on an additional showing that the qualifying or abnormal test results can be quote medically linked to chronic lung disease and you don't like the term medically linked but that's what they use that's what DOL uses It is your honor in that regulatory history however it's important to note what the DOL actually what the regulation itself actually states the regulation itself does not state medically linked to a chronic pulmonary condition the regulation states produced and your honor it's employer's position that link and produce are two very different terms link it only requires a basic correlation while produce requires that causal connection Counsel can I interrupt you there because the ALJ said linked Dr. Perper never those weren't his words those were the ALJ's words I think the board then in reviewing that said kind of went away didn't mention linked and they said the statement from Dr. Perper allowed it to say that the chronic lung disease produced the studies so it seems like the board's decision kind of at least corrects the argument you have about linkage versus produced by I think you have another argument that says even though they use the right language they say the substantial evidence that supports it doesn't do so at all so my question is are you focused on the ALJ's linked language given what the board says or is your argument really that there's no substantial evidence at all in Perper's report that the pneumoconiosis caused those blood studies your honor I think it's twofold I think the first issue is that while the board is tasked with reviewing the ALJ's language it can't step into the shoes and say well this isn't what the ALJ means you know we have to rely on what the ALJ specifically stated and the ALJ specifically stated well Dr. Perper's reports allegedly linked those blood gas studies to the chronic condition now on the twofold is the substantial evidence employer wouldn't argue that substantial evidence does not support the ALJ's or the board's decision and orders in this case substantial evidence requires more than a reasonable mind generally a reasonable mind can't be based on opinions that are silent or ambiguous as to section 105 D you know you can't establish a report can't establish specifically that those arterial blood gas studies were produced by that chronic pulmonary condition if it doesn't state anything about that specific issue in this case Dr. Perper's report was silent Dr. Perper's report he acknowledged the arterial blood gas studies he then noted that those specific arterial blood gas studies that was taken during a hospitalization where the minor obtained or was diagnosed with acute pneumonia and acute respiratory distress syndromes is this the part of the argument your brief that Dr. Perper's report was was not well-reasoned and well-documented that is correct well did you raise this before the board that Dr. Perper's report was insufficient it was not well-reasoned and well-documented your honor we did raise this in front of the board yes when you argued what that it wasn't sufficient that when it wasn't physician we have argued consistently from the ALJ up that Dr. Perper's report fails to meet the requirements of section 718-105 ok that's fails to meet the requirements how first because it uses the wrong word and second because it's not well-reasoned and well-documented that is correct your honor and so both of those specific arguments you made before the board we believe so your honor yes um is one of your um switching gears a little bit um the regulation that you focus on says um a um test results accompanied by a report um or something to that effect is that you know what I'm talking about no your honor ok I'm sorry let me so in and um you know 718-105-D um it says if one more blood gas studies producing results which meet the appropriate table of dependencies administered during hospitalization which ends in the minor's death then any such study must be accompanied by a physician's report establishing that the test results um were produced by and you're you're you focused on the reduced by part do you um I'm I'm actually curious about the company a physician's report accompanied by the study accompanied by a report um you know Dr. Perfer issued his report you know years after a kind of litigation report and I'm trying to figure out if you have challenged that at all that that that accompanied by isn't something that can be a subsequent litigation report it's got to be something that is done you know contemporary contemporaneously with the study that's not a have you raised that issue your honor employer has not raised that issue all right thank you um Dr. Perfer's opinion at most links these arterial blood gas studies to um a excuse me one second they link these terminal blood gas studies to hypoxemia he opined that the minor had a chronic pulmonary condition specifically pneumoconiosis and COPD but he never linked the or found that those arterial blood gas you're using the word linked now I thought you said that wasn't appropriate well I'm saying that that's what the ALJ improperly done your honor that the ALJ improperly found excuse me I misspoke improperly linked or mischaracterized Dr. Perfer's opinion in linking those deathbed arterial blood gas studies to the chronic pulmonary condition um simple generalized statements found in Dr. Perfer's report about progressive disease simply does not meet the regulations you know to have a chronic pulmonary condition a minor can have a chronic pulmonary condition and a minor can have terminally disabling arterial blood gas studies but those two may be linked but there has to be a physician's report that establishes specifically that though that chronic pulmonary condition caused those terminal values seen in the ABG results the two existing is simply not enough and you have to have that physician's report that establishes that and in addition your honors I don't know anything about this blood gas study but the numbers are what they are how does he go about saying that that number does what you want it to do as opposed to he does something else I mean it's a set of numbers isn't it? It is a set of numbers but it's claimant's burden your honor claimant has to submit that physician's report and the expert as a physician would review those values review the other medical records and come to a determination that those specific arterial blood gas studies were produced by the chronic pulmonary issue and not the acute circumstances of hospitalization and that would be as I understand the regulations council um there are blood gas studies and then death bed blood gas studies that is correct your honor so this is a requirement that's specific to so called death bed studies because of the peculiar issues that arise for those studies from a timing standpoint is that right? That is correct your honor the section 718 105 D is extremely specific it only applies when the minor has entered into hospitalization that hospitalization ends in the minor's ultimate death and during that hospitalization arterial blood gas studies were taken and related to that as I understand it we're talking about the total disability finding and the regulation or the statute I'm sorry if I have it wrong lists four ways that can be done I can't remember them all ones yeah I think some pulmonary studies one's this there's a third kind and then there's the fourth kind of a overall review of the medical records right? That is correct your honor and if you're in the fourth category you might could talk about blood gas studies more generally in a way that doesn't necessarily you know hit the subsection 2 part but if you look at the procedural history of this case the first ALJ or the second ALJ the focus really isn't in that sub paragraph 4 section we're in the sub paragraph 2 section where you're tying total disability to these studies. That is correct your honor and it looks like Perfer doesn't I mean Perfer has I think six medical legal questions he asked and none of them deal with this regulation is that correct? That is correct your honor Dr. Perfer's opinion specifically when discussing total disability notes that one second he notes the treatment records in general and that's on page JA 625 but when discussing those treatment records and finding the minor totally disabled he does not specifically mention those arterial blood gas studies he notes bilateral pneumonia and that acute respiratory distress syndrome but again and importantly in this case is that section 7105 D specifically was put into this regulation to ensure that this acute illness was not mistaken for evidence of a chronic disabling pulmonary condition Thank you your honors. Thank you Alright Mr. Alston Good morning your honors may it please the court I'm Brad Alston I'm here today representing the widow in this case Ms. Geraldine Mullins Judge Quattlebaum if you don't mind I'd like to go straight to what you were saying at the end and the reason I want to do that is I can tell from the questions that your honors have asked that you've got a great understanding of where we are in this case so I intended to kind of go through the presumption and all that but I think you've got that. You stated that none of Dr. Perfer's answers to those questions specifically stated that the arterial blood gas studies in this case established total disability but the thing is the ALJ as the trier of fact is supposed to weigh the evidence and draw his or her own inferences there from and when you look at Dr. Perfer's 47 page single spaced medical opinion and the fact that Dr. Perfer reviewed an incredible amount of medical records I mean I don't envy a physician in this position I mean but Dr. Perfer I mean Judge he reviewed records from Dr. Smitty, Grundy Internal Medicine, Dr. Sutherland, Dr. Nazarene, Dr. Patel, Tri-State Clinic, Buchanan General, Clinch Valley Medical Center Right so what part of that 47 pages would you point us to as best making the connection between total disability and the blood gas studies? Judge I don't think there's one sentence that I can say this is the best sentence that absolutely points you there but I'll give you several different sentences that I believe support what I just said which the ALJ read this incredibly detailed opinion and drew an inference that it was plain as day that Dr. Perfer believed that these arterial blood gas studies that were taken during the terminal hospitalization were caused by a chronic condition so with all these statements together I think that's the inference that the ALJ draws. He states and this is on identify where you are so we can look at it. Absolutely your honor so I think the meat of Dr. Perfer's statements are at joint appendix 614, 615 and we've also got 6 so 614 through 6 I guess 16 would be the pages that I want to reference so he stated Dr. Perfer that the treatment records first show symptomatic manifestations of chronic lung disease which are shortness of breath, cough, shortness of breath on mild exertion, mucus expectoration and he specifically stated that these started around the year 1998 so he'd go on to review 16 more years of records so that's number one. Number two he states specifically that these symptoms continued to progress and worsen and they were accompanied by worsening radiologic finding and studies in the record. In other words his clinical coworkers pneumoconiosis continued to worsen over the 16 years that he reviewed the treatment records. That's number two. Number three these were accompanied by objective tests in the record from all of these various hospitalizations. Those include respiratory function reductions. Where are you now? I'm 6, I think I'm at 615 at this point. It switched over from 14 to 15 your honor. These were accompanied by respiratory function reductions, decreased diffusion reductions which is you know DLCO is part of pulmonary function tests, decreasing gases, hypoxemia, poor quality of life at the end and ultimately death. And then he stated that in these treatment records we can clearly see coworkers pneumoconiosis diagnosed throughout both clinical and legal. We can clearly see COPD which of course the first word of COPD is chronic obstructive pulmonary disease clearly diagnosed throughout these treatment records. We can see chronic bronchitis, again chronic bronchitis clearly diagnosed throughout these treatment records. We can see a history of asthma that's worsening clearly throughout these treatment records and he specifically stated these continue to progress over time. So from 1998 forward and not an acute onset. Exactly your honor and if your honor were the trier of fact which this court was not the trier of fact but let's for a moment step into the shoes of the fact finder. If you have a physician who's spent 15 pages of single spaced medical report discussing chronologically, I mean it's pretty incredible Dr. Perper's report, chronologically year by year here is evidence of respiratory declining function within eight or nine different sets of treatment records and then ultimately at the end that doctor concludes he had declining chronic respiratory conditions that ultimately led to the death bed arterial blood gas studies that I'm sorry? What you just said at the end I'm trying to make sure I understand is that what that trier of fact said? Let me give you the site. You talked about when we were asking you to talk about Dr. Perper's report you have cited to a bunch of stuff that talks about how he opined that he had chronic pulmonary disease. Yes. I don't think anyone's really here challenging that but at the very end you said something about how that produced the blood studies and if that was in the report I wanted to make sure you point me to the report or whether you're saying once if you have a bunch of evidence of a chronic that he believed he had a chronic lung disease that's enough for the trier of fact to conclude that. Which one are you saying that he said it was produced or evidence of chronic lung disease supports the conclusion that that lung disease produced the test report? The latter your honor and I think that's a perfectly fair question. I appreciate what you said. That's a bit of a misspoke just a little bit there but I don't think that matters and here's why. Because the ALJ made that finding under 105D by Dr. Perper's medical report which was relied on by what Dr. Perper said in the 47 page single spaced report and because that was a fair and rational inference for the ALJ to find from Dr. Perper's report that's supported by substantial evidence. Because JA615 which is Dr. Perper's report he lists at the top there the following evidence substantiates the worsening of the various respiratory parameters over the years of the chronic pulmonary disease survival and one of those that substantiates that is the arterial blood gases. Absolutely. Followed a similar pattern of marked progressive worsening. So that is I think as close as well. I think that is saying and I think the ALJ and the board both thought that also was saying that that was the result of the his total disability. Absolutely your honor and that's at 615 and that was listed here in my list but you're exactly right if you isolate that there is your point in the record at 615. Your honor I was going to move on to the board but I'd like to hear your question if you have another. Factually here I think I'm right the only arterial blood gas studies are the death bed studies. Correct. Were there any in those years leading up to that? There weren't your honor and of course that's a point that Dr. Castle made. Dr. Castle in his opinion had stated we have no baseline arterial blood gas studies to compare these two and the ALJ didn't really afford a lot of weight. That goes both ways. He can make that argument but Judge Thacker just asked the question that if those are the only ones those are the only ones he could be relying on. It is fair isn't it to say he never certainly explicitly makes the finding that 105 says needs to be made right? No we don't have a physician here who went into the legal realm and discussed Come on Perford calls his opinions medical legal. It's not like he's in some laboratory with a white coat. I've done enough of these to know he makes his way around the black lung claim system. That's really not the point. No it's not. But Judge Quattlebottom I do think this is important. In fairness to Dr. Perper I will say this is not something that comes up frequently. And in fact you'll notice with my friend on the other side I mean there's no legal citations to any kind of case law that deals with 105. So then how much maybe talk about the standard of review how much second guessing we should be doing of the ALJ and the board here. You should do no guessing of the ALJ and the board because this court standard is whether it was rational supported by substantial evidence and in accordance with law and the ALJ you can tell this ALJ had a very detailed understanding of the law because when this ALJ was tasked with considering modification and Judge Bartow's prior decision he really went out of his way to outline the law and then it was a Well Ms. Prince says it's not in accordance with the law because it the ALJ they use the word link rather than produce. Well as the benefits review board pointed out and I think this is this is a really great point that I think the board said when they were talking about the minority opinion in this case and I think it answers that question. The benefits review board specifically stated that that would ignore a salient fact. Dr. Perper was credited by the ALJ in this case and he found that the acute respiratory injury at death was due to an underlying chronic worsening coal dust induced condition and that's at 88 and so I think when you consider that that eliminates any kind of a splitting of hairs between lingo I know Ms. Prince mentions in her brief she quotes the Webster's dictionary and says there's a difference between this term and that but when you think about what Dr. Perper actually did he specifically you know is opining in this case that his occupational exposures is what led to the declining you know disability and ultimately death in this case. So isn't what Perper saying that I mean when you get to the actual language some of his conclusions not just what he's read but the language and particularly the language the board cites I mean it cites this quote and I think the ALJ did you know that the medical records document respiratory failure complicating coal miners pneumoconiosis with bilateral pneumonia and acute respiratory distress syndrome. So I think he's clearly saying that he had pneumoconiosis and that even though if he had some acute things at the end they worsened and that they were you know that they worsened the pneumoconiosis leading to his death. Now I don't think there's any difficulty drawing that from his opinion. The trouble I have is that the reg and I grant you it seems likely that it doesn't come up much because we're usually looking at does the overall medical opinions the overall medical opinion support it or not that subsection four there at the end and if we were in that boat we you know we'd have a lot I think more flexibility. The concern I have is the regs say you got to say something specific and I mean yeah I don't know maybe you doubt that maybe there must be evidence that supports that and I mean I don't know how to read it other than saying that you have to have a you have to have a physician's report establish the results not the death but the blood studies were the result of one versus the other and I don't know how you get that from this report and I've read the 47 pages and I only fell asleep twice doing it. But the reference Judge Thacker talked to on 615 is the only place I could see that would allow you to even get close to satisfying that regulation and maybe that's enough under a substantial evidence test but everything else that the board cites to I don't think does it at all. I think provides no substantial evidence so I think this all hinges on that one statement on page 615 and you got to take that into account where he has a specific heading. This just shows you I mean you know he's got some familiar with the law. Did Mr. Mullen suffer from a total disability respiratory prior to his death? I mean total disability that's the that's the section that we're under and you know radio silence on these blood studies in that section so maybe that's enough but that's a to me that's a awful obscure reference to make what the regs seem to require as a specific finding. Well most of the rest of that section that you just cited has to do with his opinion his reasoned medical opinion and I know you said there's there's four ways you know there's you know core pulmonale and qualifying PFTs and reasoned medical opinion was the one you were talking about in the fourth category and then we've got this other category of ABG and clearly Dr. Perper in that section gives the reasoned medical opinion and he writes this voluminous record and he explains all this stuff but just because something's not underneath a heading doesn't mean that the ALJ can't infer that and I think I can't help but just go back to the fact that this is an incredibly well-reasoned well-documented medical report where this doctor went in and explained just thousands of pages of data into a report or at least hundreds of pages I don't know One of the things I think the report said the clinical and right lung necropsy finding documented the presence of clinical black lung disease and in parenthesis I can't remember whether this was in the report or not talks about severe macular cold workers pneumococcus, he has dust related fibrosis as well as legal black lung disease, he says that Yes Judge Floyd and I think the parties generally agree that the presence of cold is not something that's contested, in fact even employers' experts will at least acknowledge clinical cold workers which I think is mostly what you're referencing there and to branch off of that, that was also a factor that Dr. Perper included in his ultimate conclusion regarding the deterioration of a chronic impairment Right, that was one of the many various respiratory parameters over the years of the chronic pulmonary disease from which he suffered, pneumoconiosis so this doctor was perhaps over inclusive I agree completely Go ahead Judge Floyd. Look at page 628 this is just in my notes and I can't remember whether it's in that report but it seems my notes seem to indicate that he has there's a note about he was not a smoker and all this stuff above, that resulted in total impermanent disability, is that in the report or is that just in my notes? No, Judge you're right another factor that he considered I think more towards Yeah that is at JA628 number 2 listed there, go ahead Judge Floyd I was just going to say I think another that's another point that Dr. Perper was making that non-smoking would eliminate another potential etiology in the overall conclusion with regard to chronic obstructive pulmonary disease and he stated that the 20, let's see it was 27.92 years of confirmed coal mine dust was the major etiology there in the diagnosis of COPD that's correct Judge Floyd. Can I ask you a question, I'm trying to don't take this as anything other than just me trying to figure out the procedural setting that we're in. Absolutely. Let's assume we were to say that the modification opinion was wrong and that the board's affirmation of that was wrong what happens at that point? It seems like you'd go back, you'd have the original ALJ and you'd be able to appeal that to the board, is that what would happen? Well I think it would depend on how this court remanded and the specific instructions I know when I write a brief on remand the very first thing I say is the court said this and you need to make sure you do that. But in this case I think that would be pretty difficult because we already have Dr. Perper's medical opinion, we already have a fact finder who's completely reviewed that medical opinion. The findings are rational supported by substantial evidence and in accordance with the law at least according to us. I'm not, it sounds like you're trying to say, but we had a prior ALJ who said that I weighed his very complete report with the other one and I found one more persuasive and I'm sure you disagree with that but my only point is if we were to say look, he may have a very well reasoned report overall on the linkage of pneumoconiosis to his death but he didn't make this specific finding and so in terms of a modification that's improper but you still could make whatever arguments you may have about the original ALJ's finding, I mean, again, you're right, how we were to write such opinion would determine what you could do but presumably you hadn't appealed the ALJ's original ALJ's decision, you'd still have those appellate rights, wouldn't you? Or would you not? Would we still have, Judge Thacker, may I ask it? Yeah, go ahead. Your question is would we still have the right to appeal from the original Judge Bartow decision which denied benefits? I think you would because you have the modification is based on Judge Clark's finding that Judge Bartow committed a mistake in the determination of fact and that mistake was specifically the way in which he considered Dr. Perper's report as it pertained to 105D. 105D but the blood study subsection of that. Absolutely. To answer your question, I think we could do that but I don't think we should do that because this is what fact finders do. This court may have looked at this case differently. This court may have considered all this evidence and reached a contrary decision but we've got an incredibly reasoned medical report it's well reasoned, well documented and we've got a very well articulated administrative law judge opinion and this court's standard is can we tell what the judge did and why the judge did it and I think it's clear that in this case you can and for that reason I'd ask you to affirm the decision in order awarding benefits on modification from Judge Clark and also to affirm the decision from the Benefits Review Board which affirmed that decision. Thank you. Thank you. We'll hear again from Ms. Prince. Ms. Prince, would you look at your JA 47? 647 or 47? Just 47. In your briefing it seems to me and Judge Sacker asked you this a while ago that in your briefing the board, your discussion of the latest ALJ opinion is largely limited to that one paragraph JA 47. The one paragraph argues that Dr. Pepper's report is not the kind of report the reg requires but you don't mention the need to make a separate finding that Dr. Pepper's overall report was well reasoned or well documented and you didn't mention ALJ's failure to consider other evidence or anything about the APA. When she asked you did you raise all this stuff before the board did you really do that? Your Honor, we might not have raised it specifically under the challenging under 105 D but we did raise that specifically under challenging whether Dr. Pepper's report in and of itself was well reasoned or well documented. Well, I mean the reason I asked that, I mean maybe you waived it. Your Honor, employer would argue that employer has consistently argued that Dr. Pepper's report is insufficient under the Riley versus Island Creek Coal Company case and that's 688 Federal Appendix 219 specifically around the 220 page mark that we aren't required to make specific arguments. We are required to make general assertions like to the board we don't agree with Dr. Pepper's opinion but we are allowed to expound upon that argument for reasons why we don't agree with Dr. Pepper. Well, let me ask you this question. Suppose we agree with you what's going to happen? Is it going to get remanded? Your Honor, if you agree with our position, the case would be remanded to the board and the board we would request to remand back to the ALJ clerk to adequately apply the regulation. So what do you gain out of this? What do you gain if we remand it? Your Honor, if you remand and the ALJ is required to properly apply the regulation as it's written, employer's position would be that Dr. Pepper's report is insufficient and benefits would ultimately be denied because the claimant would be unable to prove total disability. With all the things you said, you don't think they can dress that up in a tuxedo and make it work? They could, Your Honor, but that would be required for the ALJ and the board to properly apply the regulation. Alright. And that's what JA 47 that Judge Floyd pointed out. What you argue is that Dr. Pepper's opinion, he improperly satisfied the requirements of the regulation. Is there somewhere in here where you talk about it not being well-reasoned or well-documented? Before the board? One second, Your Honor. JA 47. Your Honor, I don't have the copy of our board brief. I'm just wondering because a couple times in response to Judge Floyd's question, you said that you would specifically argue that it was not well-reasoned or well-documented, so I thought you would be able to point me to somewhere where you did specifically argue that. I don't have that JA citation right now, Your Honor. I'm sorry. And if the widow passes away and do benefits cease or do they go to somebody else? No, Your Honor. Once the widow passes away, there would be no further benefits in this case. I don't believe she has any dependent children or it's not in the record that she has any dependent disabled children. I may be confused on the waiver issue, so help me here. As I'm looking at page 47, it says ALJ Clark improperly used Dr. Pepper's opinion to satisfy the requirements of 718.105D. You gave some of the reasons we just talked about here. As I understand your position, you're saying the regulations indicate that total disability can be shown four ways. I won't get them in order, but two of them don't apply here and two that potentially apply are the blood gas studies and the overall opinion about whether it's supported by well-reasoned medical opinions or something like that, right? Yes, Your Honor. Your argument about 105D and the blood studies, it seems to me you definitely preserve. That's what you're arguing here, right? There's this other argument about whether you challenge the well-reasoned opinion of Dr. Pepper, but was that the basis of the misstatement of fact? I thought the misstatement of fact was only about the blood gas studies. Your Honor, it is specifically only about the terminal blood gas studies. The first ALJ weighed... maybe I can't remember all this. I may be getting... Did the second ALJ say Pepper's report satisfies 105D, number one, and it also satisfies subsection four about a well-reasoned medical opinion, comparing that to all the other medical opinions? Judge Clark did not do that. No, Your Honor. So we don't have any opinion that looks at the overall well-reasoned opinions and says, looking at subsection four, they are Pepper wins. I go with Pepper. No, Your Honor. We do not have that. And if I may make one closing statement, Your Honor. I would specifically like to refer back to that JA citation that you all were discussing with counsel. It's this is the only place in Dr. Pepper's report where he specifically noted those arterial blood gas studies. And I would like to draw your attention to the whole statement there. And that second part of the statement was, during the terminal 2014 hospitalization when Mr. Mullins had contracted pneumonia and respiratory distress syndrome. That is the only time he mentions those arterial blood gas studies. So an employer would assert that the words of the statute has meaning, produce and establish. That's the only time he mentions it. So an employer would assert that he failed to meet that standard that was put forth in the regulation. So you're saying because right there he didn't add the words at the time, basically deathbed qualifier? No, I was only pointing out that this is the only place that he mentions them at all. Right. And even there he's talking about these acute illnesses of which the minor had attained during that terminal hospitalization. So even mentioning the ABGs, he's still referring to that terminal hospitalization and that acute pneumonia and acute respiratory distress syndrome. Well, no. I'm not sure that's right. The sentence begins with the following evidence substantiates the worsening of the respiratory parameters over the years of the chronic pulmonary disease survival. Then it's got six bullet points and one of them is the arterial blood gases followed a similar pattern of marked progressive worsening form. And all we have are arterial blood gas studies from the time of his terminal stay. So, I mean, I think an argument could be that the best argument that he has is that this is an indication that he thinks the blood studies substantiate the worsening of the various respiratory parameters. And if the blood studies substantiate that, isn't that maybe not using the exact same language produced? But is it reasonable for the ALJ to say they produced them? No, Your Honor. We would assert that that's not the case. A minor can have a chronic respiratory condition that causes a minor decrease in arterial blood gas studies, but those values may not be disabling in some cases. But when a minor goes in and the only blood gas studies we have is this acute hospitalization due to these acute illnesses, we have to have that physician's report to establish that those specific values, that disabling value, was due to that chronic pulmonary condition. Thank you. All right. Thank you, and Judge Quattlebaum and I will come down and greet counsel, and then if counsel will come up and greet Judge Floyd, then we'll go to our next case.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Henry F. Floyd